IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN CICCHIELLO,<br>     Plaintiff | No. 1:23-CV-0540 |
| | (Judge Munley) |
| v. | |
| DAUPHIN COUNTY PRISON, et al.,<br>     Defendants | |

## MEMORANDUM

Plaintiff Joan Cicchiello, who was previously incarcerated at Dauphin County Prison, initiated the above-captioned pro se civil rights action under 42 U.S.C. § 1983.[1] Cicchiello claims that, while imprisoned at Dauphin County Prison, numerous prison officials violated her First, Eighth, and Fourteenth Amendment rights. Because Cicchiello failed to administratively exhaust any of her Section 1983 claims, the court will grant summary judgment in Defendants' favor.

## I. BACKGROUND

Cicchiello avers that she was incarcerated in Dauphin County Prison from May 5, 2021, until July 29, 2022. (See Doc. 1 at 1, 6, 7). During that time, she alleges that various prison officials violated her constitutional rights by denying

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

her access to the courts, (id. at 2-3), wrongfully sanctioning her with solitary confinement for several weeks, (id. at 3-4), and subjecting her to unconstitutional conditions of confinement, (id. at 5-7).[2]

Cicchiello filed suit in this court on March 29, 2023. (See generally Doc. 1). She sues multiple prison officials, as well as several unidentified "officers" who allegedly worked in "security," the "mail room," and "scheduling." (Id. at 1). She alleges that Defendants violated her First, Eighth, and Fourteenth Amendment rights. (Id. at 7). Cicchiello seeks monetary damages in the amount of 5.3 million dollars. (Id.)

Defendants moved to dismiss Cicchiello's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 17). In their motion, they raised—among other defenses—the affirmative defense of failure to exhaust administrative remedies. (See Doc. 24 at 4-6). The court subsequently issued the requisite notice to Cicchiello that it would act as a factfinder for the issue of administrative exhaustion and provided her additional time to supplement the record with any evidence or materials related to exhaustion that she had not yet submitted. (See Doc. 50). The court noted that, as Cicchiello had already provided evidence and

---

[2] It is possible that Cicchiello is also attempting to assert an Eighth Amendment claim of deliberate indifference to serious medical needs. (See Doc. 19 at 4). The court need not parse Cicchiello's allegations, however, because no Section 1983 claim was administratively exhausted, as discussed *infra*.

2

argument regarding exhaustion, she was permitted but not required to further supplement the record. (See id.) Cicchiello responded by filing additional argument. (See Doc. 51).

## II. STANDARD OF REVIEW[3]

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir. 2010) (quoting Clark v. Modern Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993)).

---

[3] The court provides its standard of review for a motion for summary judgment as the parties have been informed that the court will consider administrative exhaustion in its role as a factfinder. (See Doc. 50). The parties have also been provided additional time to supplement the record with relevant evidence or supporting materials. (See id.). Consideration of evidence outside the pleadings moves this case from motion-to-dismiss territory into that of summary judgment. See FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Accordingly, Defendants' motion to dismiss with respect to administrative exhaustion is converted to a motion for summary judgment.

3

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue. Liberty Lobby, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 252) (alteration in original).  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party. Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Berkeley Inv. Grp. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

## III. DISCUSSION

As best as the court can ascertain, Cicchiello is asserting Section 1983 claims sounding in First and Fourteenth Amendment access to courts, Eighth

4

Amendment conditions of confinement, Fourteenth Amendment procedural due process, and possibly Eighth Amendment medical indifference. Defendants maintain that Cicchiello did not properly exhaust any of these claims. The court agrees.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. See id. § 1997e(a); Ross v. Blake, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. See Woodford v. Ngo, 548 U.S. 81, 85 (2006). The exhaustion process is governed by the contours of the prison grievance system in effect where the inmate is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Woodford, 548 U.S. at 90-91.

Defendants do not provide a copy of the grievance policy (or policies) in effect at the time of Cicchiello's incarceration at Dauphin County Prison. These policies, however, have been discussed and outlined in other litigation in this district. See, e.g., Harrell v. Mayer, No. 3:22-CV-0730, 2023 WL 6465415, at *4-5 (M.D. Pa. Sept. 29, 2023); Sawyers v. Brown, No. 3:12-CV-01694, 2014 WL 407337, at *2 (M.D. Pa. Feb. 3, 2014). Notably, in Boggs v. Geletti, No. 4:22-cv-

5

00708 (M.D. Pa.), the Dauphin County Prison grievance policies in effect at the time of Cicchiello's incarceration are provided. See Boggs, No. 4:22-cv-00708, Doc. 28-4 at 5-16.

The first policy, which was in effect from 2004 until March 27, 2022, see id. at 2 ¶ 7, had four steps. See Harrell, 2023 WL 6465415, at *4-5 (taking judicial notice of Dauphin County Prison's pre-March 28, 2022 grievance procedures). The first step was for the inmate to write out a grievance on 8 ½ by 11-inch paper or on an inmate request slip. Boggs, No. 4:22-cv-00708, Doc. 28-4 at 5. The grievance was to be directed to "the Warden, a Deputy Warden, or Security Major." Id. A designee would review the grievance and forward their review and recommendation to the Warden, who would make a decision that would be provided to the inmate. Id.

If the prisoner disagreed with the Warden's decision, they could appeal to the Chairman of the Dauphin County Prison Board of Inspectors. Id. The Prison Board would review the appeal and make a decision, which would be forwarded to the inmate. Id.

If the prisoner disagreed with Chairman's decision, they could appeal to the full Prison Board. Id. Those appeals were required to be mailed to the Prison Board and a copy of the appeal sent to the Warden for tracking purposes. Id.

6

The full Prison Board would then make a decision, which would be forwarded to the inmate. Id.

If the prisoner disagreed with the Prison Board's decision, they could make a final appeal to the Dauphin County Solicitor. Id. Those appeals were required to be mailed to the Solicitor's Office with a copy provided to the Warden for tracking purposes. Id. The Solicitor would review the grievance and make a final decision, which would be forwarded to the inmate. Id.

On March 28, 2022, a new five-stage grievance policy went into effect at Dauphin County Prison. See id. at 2 ¶ 7. At the first stage, an inmate must submit, within 20 days of the date of the "incident or problem," a formal grievance to the Grievance Coordinator using the appropriate grievance form. See id. at 8. The Grievance Coordinator will then investigate the grievance, permit the targeted staff member to respond, and communicate that response to the inmate. See id.

At the second stage, if the grievance is not resolved through the staff member's response, the inmate can respond to the Grievance Coordinator, who will then discuss the grievance with the targeted staff member's supervisor. See id. at 8-9. The staff member's supervisor will provide a response, which will be communicated to the inmate. See id. at 9.

7

At the third stage, if the grievance is not resolved through the supervisor's response, the inmate can respond once again to the Grievance Coordinator, who will then forward the grievance (and all previous filings and responses) to the Director of Corrections for review. See id. The Director of Corrections will then provide their response and proposed solution, which will be forwarded to the inmate by the Grievance Coordinator. See id.

At the fourth stage, if the grievance is not resolved by the Director of Corrections' response and proposed solution, the inmate may respond again to the Grievance Coordinator, who will forward the grievance (and all previous filings and responses) to the Warden. See id. at 9-10. The Warden will then provide their response and possible solution, which will be forwarded to the inmate by the Grievance Coordinator. See id. at 10.

At the fifth and final stage, if the grievance is not resolved by the Warden's response and proposed solution, the inmate may respond again to the Grievance Coordinator, who will forward the grievance (and all copies of previous stages) to the Director of Corrections. See id. The Director of Corrections will then provide the final response and, if the matter is "deemed to be serious in nature," will consult with the Prison Board Solicitor before rendering a final decision. See id.

This policy provides for a general 60-day time limit for the entire review process unless the inmate agrees in writing to an extension. See id. at 11.

8

Moreover, if a response at one of the stages is not provided to the inmate within the given time limit (normally five working days), the inmate is entitled to move on to the next stage in the review process. See id. Dauphin County Prison utilizes a specific three-page grievance form that contains spaces for each level of its five-stage grievance process. See id. at 14-16.

Defendants assert that Cicchiello failed to properly exhaust any of her Section 1983 claims. (See Doc. 24 at 5-6). Cicchiello appears to concede that she did not fully exhaust any of the claims she is raising in the instant lawsuit. (See Doc. 19 at 1; Doc. 27; Doc. 51 at 2). She contends that, when she first entered Dauphin County Prison, she was not given a copy of the prison's "Policy and Procedure," and therefore she did not know "the policy to file an Administrative Remedy." (Doc. 27; see also Doc. 51 at 2).

Cicchiello's argument regarding ignorance of the administrative remedy process fails for two reasons. First, it is clear that she attempted to grieve at least some of her complaints. Documents Cicchiello herself provided reflect that she filed grievances regarding alleged denial of access to courts, (see Doc. 19-1), and her conditions of confinement, (see Doc. 19-6).

As to her access-to-courts claim, Lieutenant Emanuel Rose noted in a May 26, 2021 memorandum to Warden Gregory Briggs that he investigated Cicchiello's grievance regarding "being denied access to court" based on her lack

9

of writing and mailing materials. (Doc. 19-1 at 2). Rose noted that he had explained to Cicchiello the process for indigent prisoners to obtain writing and mailing supplies, that Cicchiello had "stated the issue had already been resolved," and that she "wished to withdraw the grievance" and provided him with "a memo withdrawing the grievance." (Id.) That grievance was thus determined to be "settled." (Id.) Notably, on that document, an explanation of the appeal process in place at that time—appeal to the Prison Board Chairman—was provided. (See id.).

Cicchiello also appears to have initiated the grievance process for her conditions-of-confinement claim. On May 23, 2022, she submitted a typed "appeal/grievance" regarding her cell classification, some of the purportedly unconstitutional conditions she experienced, and her medical history. (See Doc. 19-6 at 2). A prison official responded to this grievance, explaining that "everyone is eventually moved into a cell" and that cell classification "is not a grievable issue." (Id.) The official additionally informed Cicchiello that she should not be typing grievances or grievance appeals (i.e., she should be using the official grievance form under the new grievance policy). (Id.)

Neither of these grievances (or any other grievance Cicchiello references) was pursued through all steps of either grievance process, and Cicchiello does not argue otherwise. Proper exhaustion, however, requires an inmate to

complete each step of their facility's grievance process. See Woodford, 548 U.S. at 90 (explaining that proper administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (citation omitted)); see also Williamson v. Wexford Health Sources, Inc., 131 F. App'x 888, 890 (3d Cir. 2005) (nonprecedential) (finding that filing initial grievance only was insufficient to exhaust administrative remedies under state prison's three-step grievance requirements).  And although Cicchiello claims she did not know the contours of the administrative remedy process at Dauphin County Prison, that assertion is belied by her filing multiple grievances and those grievances being addressed on the merits rather than rejected on procedural grounds.  The prison officials' responses to her grievances likewise undercut any assertion by Cicchiello that administrative remedies were unavailable.

The second reason Cicchiello's argument fails is that merely claiming ignorance of a prison's grievance procedures does not establish that administrative remedies were "unavailable." Time and again, courts within and beyond this district have rejected prisoners' after-the-fact claims of ignorance to the grievance process. See Terantino v. Fortson, No. 1:21-CV-1248, 2022 WL 17228660, at *3 (M.D. Pa. Nov. 23, 2022); Gamon v. Bell, No. 1:20-CV-79, 2020 WL 3412683, at *5 (M.D. Pa. June 22, 2020); Stokes v. Wenerowicz, No. 13-

7093, 2017 WL 3226863, at *4 (E.D. Pa. July 31, 2017); Tirado v. Dep't of Corr., No. 2:13-CV-1709, 2014 WL 5860598, at *4 (W.D. Pa. Nov. 12, 2014) (citing Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2003), for the proposition that "ignorance or confusion regarding . . . [prison grievance] policies does not excuse failure to adhere" to proper exhaustion requirements); Graham v. County of Gloucester, 668 F. Supp. 2d 734, 741 (E.D. Va. 2009) ("[E]ven accepting plaintiff's allegation that he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement." (quoting Gonzales-Liranza v. Naranjo, 76 F. App'x 270, 273 (10th Cir. 2003))); Miller v. Schuylkill Cnty. Prison, No. 1:07-CV-331, 2007 WL 3342766, at *1 (M.D. Pa. Nov. 9, 2007) ("an inmate's subjective lack of awareness regarding administrative remedies will not excuse" his failure to exhaust); Twitty v. McCoskey, 226 F. App'x 594, 596 (7th Cir. 2007) (nonprecedential) ("A prisoner's lack of awareness of a grievance procedure, however, does not excuse compliance.").

Indeed, allowing a prisoner to circumvent administrative exhaustion by asserting a subjective claim of ignorance about the grievance process "would eviscerate the exhaustion requirement of the PLRA." Terantino, 2022 WL 17228660, at *3; Graham, 668 F. Supp. 2d at 740 ("If exhaustion could be excused when a prisoner claimed a lack of specific knowledge about the

grievance process, an 'awareness' exception requiring courts to analyze and determine prisoners' knowledge levels of the grievance process at given points in time would be undoubtedly routinely invoked."). It would also run afoul of the Supreme Court's admonition that district courts do not have discretion to decide whether exhaustion should be excused. See Ross, 578 U.S. at 640-41 (quoting Woodford, 548 U.S. at 85).

The court additionally observes that Cicchiello has failed to proffer any evidence to support her claims regarding not being provided with an inmate handbook upon request or failing to be informed about the grievance process. At summary judgment, a plaintiff "may not rest upon the mere allegations or denials of [her] pleadings but, instead, must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." Jutrowski v. Township of Riverdale, 904 F.3d 280, 288-89 (3d Cir. 2018) (quoting D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 268-69 (3d Cir. 2014)). Cicchiello has not offered any competent evidence, like an affidavit or witness statement, supporting her claims that she was denied information about the prison's grievance process.

The record is clear that Cicchiello failed to exhaust available administrative remedies. She can no longer do so, as she has not been incarcerated at Dauphin County Prison since 2022. Thus, she has procedurally defaulted on her

13

Section 1983 claims. See Spruill v. Gillis, 372 F.3d 218, 230-31 (3d Cir. 2004). Cicchiello provides no adequate excuse for her procedural default, as a claim of ignorance to the grievance process simply will not suffice to show that administrative remedies were unavailable. Therefore, summary judgment will be granted in Defendants' favor on all claims.

## IV. CONCLUSION

Based on the foregoing, the court will grant summary judgment in Defendants' favor on all Section 1983 claims because Cicchiello failed to exhaust her administrative remedies. An appropriate Order follows.

Date: 1/26/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court